**UNITED STATES of America,**
**Appellant,**

v.

**WELLS FARGO BANK, formerly Wells Fargo Bank American Trust Co.,**
etc., **Appellee.**

No. 21620.

United States Court of Appeals
Ninth Circuit.

April 11, 1968.

Louis M. Kauder (argued), Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Richard C. Pugh, Acting Asst. Atty. Gen., Washington, D. C., Cecil Poole, U. S. Atty., San Francisco, Cal., for appellant.

Henry C. Clausen (argued), of Clausen & Clausen, San Francisco, Cal., for appellee.

Before BARNES, HAMLIN and CARTER, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from a judgment of the District Court for the Northern District of California. Our jurisdiction is established by 28 U.S.C. § 1291 (1964).

The facts of the case are undisputed. On May 19, 1955, a federal estate tax return was filed on behalf of the estate of one Augusta W. Lachmund, whose death had occurred on February 28, 1954; the tax was paid as reported. Claiming that a certain trust created by the decedent had been established in contemplation of death, the Commissioner of Internal Revenue proposed a deficiency. This the estate paid on February 25, 1957. On May 16, 1957, the estate filed a claim for refund of the deficiency payment, but the claim was denied by the Commissioner's delegate. The estate then proceeded on March 21, 1958, to file suit for a refund of the payment in the District Court for the Northern District of California. Following trial, judgment for the estate was entered on September 8, 1959, and the refund was paid in full by the United States on April 26, 1960.

Thereafter, on June 15, 1960, the estate sought authorization in state probate proceedings for the payment of attorneys' fees incurred in the litigation just described. Fifteen days later the probate court authorized the payment of $9,321.-63 for attorneys' fees, $750 for executor's fees, and $128.65 for miscellaneous costs in connection with that litigation. Those amounts were paid on July 6, 1960.

On May 1, 1961, the estate filed another claim for refund, based on deductions for (i) the amounts paid for attorneys' and other fees pursuant to the probate court ruling, and (ii) attorneys' fees arising from the claim being made. This claim was denied by the Commissioner on the ground that it had not been filed within the period provided by law.

The present action was then instituted by the estate's representative. The Government's motion to dismiss on the ground that the claim had not been timely filed was denied, and the district court entered findings of fact and conclusions of law to the effect that the claim had been properly made. Judgment for the plaintiff was entered on September 23, 1966, and the United States has appealed.

We begin with the undisputed proposition that failure to make a timely refund claim bars any action for such refund. Noland v. Westover, 172 F.2d 614 (9th Cir.), cert. denied, 337 U.S. 938, 69 S.Ct. 1515, 93 L.Ed. 1744 (1949).[1] The sole question to be determined is whether the claim here at issue was made within the time allowed by the applicable law.

It is conceded that, since the decedent Lachmund died on February 28, 1954—prior to adoption of the Internal Revenue Code of 1954—this question is governed by the 1939 Code and the regulations promulgated thereunder. Section 910 of that Code, dealing with estate tax, provided that

"[a]ll claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax." Int.Rev.Code of 1939, § 910, 53 Stat. 138.

Initial payment of the tax on the Lachmund estate was made on May 19, 1955, and the deficiency was paid on February 25, 1957. The claim for refund now in question was not filed, however, until May 1, 1961. The terms of section 910 would appear literally, therefore, to preclude the present suit.

Appellee's position, however, is that this literal interpretation of the section

---

1. See Int.Rev.Code of 1954, § 7422(a): "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

ought not to be adopted. Basing this position primarily on considerations of fairness, it argues first of all that the section's three-year limitations period should run only from the time attorneys' fees were in fact awarded by the state probate court on June 30, 1960. It is pointed out that this is a situation in which the events that made a refund substantively possible—the incurring and payment of attorneys' fees in connection with the original refund litigation—occurred after actual payment of the tax in question; and decisions involving other such situations are cited. In many of these cases only a fraction of the specified limitations period was in reality available to the taxpayer. In some, the liability-changing events did not occur until after expiration of the specified limitations period (computed from the date of physical payment), so that the literal terms of the limitations provision, strictly construed, entirely precluded recovery. In response to these considerations several decisions have held in such circumstances that the limitations period runs only from the time of the later, operative event, so as to prevent what is considered a harsh result. See, e. g., Reeves v. United States, 154 F.Supp. 673 (W.D.Pa.1957); Duncan v. United States, 148 F.Supp. 264 (D.Mass.1957); cf. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945); Daney v. United States, 247 F.Supp. 533 (D.Kan.1965), aff'd, 370 F.2d 791 (10th Cir. 1966). The judgment below apparently rests on such a theory. C.T. 98. On the other hand, some courts have felt compelled by the seemingly clear statutory language to take a less flexible view. See, e. g., First Nat'l Bank of Miami v. United States, 341 F.2d 737 (5th Cir. 1965), aff'g 226 F.Supp. 166 (S.D.Fla.1963); Kellogg-Citizens Nat'l Bank of Green Bay, Wis. v. United States, 330 F.2d 635, 165 Ct.Cl. 452 (1964); cf. United States v. Zacks, 375

U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963); Stepka v. United States, 196 F. Supp. 184 (E.D.N.Y.1961).

■ We need not enter this controversy, however, for even under the former approach to section 910 appellee cannot succeed. It is the victim of no unfairness; even as minimally defined, its obligation to preserve its rights was not met. Payment of its deficiency was made on February 25, 1957, and it was apparent shortly thereafter that attorneys' fees would be incurred in connection with its claim for refund of that payment. Yet no claim for such fees was filed for four years. Meanwhile, pleadings were filed, trial was held, and the estate's judgment in the amount of the original deficiency payment was satisfied in full by the Government.

Appellee can hardly argue that its delay was justified by any reasonable view of the Code's requirements. For the terms of Treas.Reg. 105, § 81.34, T.D. 5596, 1948–1 Cum.Bull. 127, promulgated under the 1939 Code and applicable during the years in question, stated that

"[a] deduction for attorneys' fees incurred in contesting an asserted deficiency or in prosecuting a claim for refund should be claimed at the time such deficiency is contested or such refund claim is prosecuted."

This provision was soundly interpreted in Bohnen v. Harrison, 232 F.2d 406 (7th Cir. 1956), to mean that a "derivative" refund claim based on attorneys' fees incurred in prosecuting an "original" claim could be asserted for the first time during the course of the "original" litigation. See Frank v. Granger, 145 F.Supp. 370 (W.D.Pa.1956).[2] Nor can doubt about the precise amount of the fees which might be allowed suffice to excuse appellee's inaction. Another part of the same regulation provided that

"[a] deduction for such [attorneys'] fees shall not be denied, and the suffi-

---

2. It is immaterial for our purposes whether the regulation could, consistently with section 910 of the Code, authorize a claim based on attorneys' fees to be filed during the pendency of a refund suit but more than three years after payment of the tax in question.

ciency of a claim for refund shall not be questioned, solely by reason of the fact that the amount of the fees to be paid was not established at the time that the right to the deduction was claimed." [3]

In view of this latter provision, even if we were to adopt the "equitable" approach to section 910 referred to above, the latest date from which the limitations period could be said to run would be March 21, 1958, when the original refund suit was initiated. Fairness requires no more—and no further postponement can be justified—since from that point forward it was for all intents and purposes clear that the estate would be obligated to pay attorneys' fees relating to the litigation; [4] such fees were in fact being incurred, and undoubtedly could have been at least roughly estimated in accordance with the regulation quoted above. Yet even that date is more than three years prior to the filing of the present refund claim. See Kellogg-Citizens Nat'l Bank of Green Bay, Wis. v. United States, 330 F.2d 635, 165 Ct.Cl. 452 (1964).[5]

Appellant makes the alternative contention that the refund claim here in question must be deemed an "amendment" to its 1957 claim. No authority is cited supporting such a theory, however, and we have discovered none. The substance of the claim for attorneys' fees is plainly different from that of the original claim. And the limitations period applicable to the 1957 claim expired long before appellee submitted its "amendment"; indeed, that claim was litigated to completion. In these circumstances there is no merit in appellee's contention. See, e. g., United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405 (1938); United States v. Memphis Cotton Oil Co., 288 U.S. 62, 72, 53 S.Ct. 278, 77 L.Ed. 619 (1933).[6]

Since no claim was filed within the applicable limitations period, the present suit is barred. The judgment of the district court is reversed, and the case is remanded with instructions to dismiss.

3. Under the 1954 Code the following provision was added to the successor of the regulation in question:

"A deduction for reasonable attorneys' fees actually paid in contesting an asserted deficiency or in prosecuting a claim for refund will be allowed even though the deduction, as such, was not claimed in the estate tax return or in the claim for refund." Treas.Reg. § 20.2053–3(c) (2) (1958).

We take this provision to have been aimed merely at clarification; its substance had been implied by the two portions of the regulation quoted above. See Bohnen v. Harrison, 232 F.2d 406 (7th Cir. 1956).

4. This conclusion was, in fact, very likely evident at an earlier date.

5. Section 910 additionally contained the following sentence (which is in principle echoed by section 6511 of the 1954 Code):

"The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund." Int.Rev.Code of 1939, § 910, 53 Stat. 138–139.

This provision, as well as that dealt with above, can on occasion present problems (relating primarily to construction of the term "payment") which might be thought to require an "equitable" solution. See, e. g., Duncan v. United States, 148 F. Supp. 264, 268 (D.Mass.1957); cf. Treas. Reg. § 20.2053–3(c) (2) (1958). We mention this point without further comment, merely to illustrate further the difficulties attending refund claims such as that involved here. The provision just quoted is not involved in our decision, since appellee has under any reasonable test failed to satisfy the basic limitations provision of section 910.

6. Acceptance of appellee's argument would, as its counsel seemed to admit on oral argument, apparently preclude the application of any limitations period to refund claims based on attorneys' fees incurred in previous refund litigation; such claims, whenever made, would "relate back" to the original litigation. Such a situation would of course be thoroughly inconsistent with the scheme of orderly refund contests set up by Congress.